# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

TROY TERRELL McNEAL,                     No. CIV S-06-1763-MCE-CMK-P

    Petitioner,

  vs.                                  FINDINGS AND RECOMMENDATIONS

DERREL G. ADAMS, et al.,

    Respondents.

_____/

    Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for a writ of habeas corpus (Doc. 1),[1] respondents' answer (Doc. 12), and petitioner's traverse (Doc. 15).[2]

///

///

---

[1] Petitioner filed a prior petition in this court in 2005 which was dismissed, without prejudice, for failure to exhaust state court remedies.

[2] Petitioner filed an "addendum" to his traverse (Doc. 17) and applications to amend his traverse (Docs. 19, 20, and 21), with additional arguments attached.  The requests to amend the traverse are granted.  All arguments made by petitioner have been considered.

# I. BACKGROUND

## A. Facts[3]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On May 29, 2000, defendant molested his girlfriend's 14-year-old daughter. In the back seat of a car, defendant removed the victim's clothing, touched her breasts with his hand and mouth, and (despite the victim's resistance) moved her underwear to the side and pushed his penis between her vagina and anus. He did not penetrate her. A sexual assault exam revealed abrasions consistent with the victim's story. DNA evidence on the victim's sanitary pad matched the DNA of defendant.

## B. Procedural History

Petitioner was convicted following a jury trial of four counts of child molestation and one count of sexual battery. He was sentenced to a determinate term of 18 years in state prison.[4] Petitioner's conviction and sentence were affirmed on direct appeal by the California Court of Appeal in a reasoned opinion issued on April 20, 2004. The California Supreme Court denied direct review without comment or citation on July 14, 2004.

///

---

[3] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

[4] Petitioner has filed a letter inquiring as to the effect of Cunningham v. California, 127 S.Ct. 856 (Jan. 22, 2007), on this case. He also argues in documents amending his traverse that Cunningham affects this case. In Cunningham, the Supreme Court held that, as applied to upper-term sentences, California's determinate sentencing law is unconstitutional. Cunningham is based on the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). See Fennen v. Nakayema, 494 F. Supp. 2d 1148, 1155-56 (E.D. Cal., June 14, 2007). The Ninth Circuit has held that Apprendi does not apply retroactively on collateral review. See United States v Sanchez-Cervantes, 282 F.3d 664, 666-67 (9th Cir. 2002). Similarly, the Ninth Circuit has held that Blakely v. Washington, 542 U.S. 296 (2004), which is also based on Apprendi, does not apply retroactively. See Schardt v. Payne, 414 F.3d 1025, 1027 (9th Cir. 2005). Therefore, Cunningham, which is even farther removed from Apprendi than Blakeley, cannot apply retroactively. See Fennen, 494 F. Supp. 2d at 1155-56; see also Rosales v. Horel, 2007 WL 1852186 (S.D. Cal., June 26, 2007), Salerno v. Schriro, 2007 WL 2153584 (D. Ariz., July 24, 2007). Petitioner's sentence became final before Cunningham was decided.

1    Petitioner then filed a series of post-conviction actions in state court.  Petitioner
2 first filed a habeas corpus petition in the Sacramento County Superior Court, raising the
3 following claims:  (1) ineffective assistance of trial counsel for failing to appear at a hearing on
4 the prosecution's motion to compel DNA evidence or failing to challenge the court's ruling on
5 that motion; (2) ineffective assistance of trial counsel for failing to call and/or fully examine two
6 witnesses – Sharita Wright and Vita Hoggard; (3) ineffective assistance of trial counsel for
7 failing to refresh the recollection of witness Debbie Payne; (4) trial court error related to the
8 order granting the prosecution's motion to compel DNA evidence; and (5) ineffective assistance
9 of appellate counsel for failing to establish that the hearing on the DNA motion was a "critical
10 stage" in the proceedings.  On July 20, 2005, the Superior Court denied post-conviction relief.
11    Petitioner's next state court post-conviction action was filed in California Court of
12 Appeal, which denied relief without comment or citation on September 15, 2005.  Finally,
13 petitioner sought further review by the California Supreme Court, which also denied relief
14 without comment or citation on August 2, 2006.

## II.  STANDARDS OF REVIEW

17    Because this action was filed after April 26, 1996, the provisions of the
18 Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively
19 applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.
20 (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA
21 does not, however, apply in all circumstances.  When it is clear that a state court has not reached
22 the merits of a petitioner's claim, because it was not raised in state court or because the court
23 denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal
24 habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.
25 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach
26 petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

(9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus, under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both standards, "clearly established law" means only those holdings of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards.  A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal

habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

## III.  DISCUSSION

Petitioner raises the following claims:  (1) the trial court erred by allowing the prosecution to amend the charging document after his initial arraignment, but not arraigning him on the amended charging document; (2) trial counsel was ineffective for failing to appear at the prosecution's motion to compel DNA evidence; (3) the trial court erred by granting the motion to compel DNA evidence; (4) trial counsel was ineffective for failing to refresh the recollection of witness Debbie Payne; (5) appellate counsel was ineffective for failing to establish that the motion to compel DNA evidence was a "critical stage" in the proceedings; and (6) trial counsel was ineffective for failing to call and/or fully examine two witnesses – Sharita Wright and Vita Hoggard.

### A. **Ineffective Assistance of Trial Counsel**

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.

1  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to
2  have been the result of reasonable professional judgment.  See id. at 690.  The federal court must
3  then determine whether, in light of all the circumstances, the identified acts or omissions were
4  outside the wide range of professional competent assistance.  See id.  In making this
5  determination, however, there is a strong presumption "that counsel's conduct was within the
6  wide range of reasonable assistance, and that he exercised acceptable professional judgment in all
7  significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing
8  Strickland, 466 U.S. at 689).

9   Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.
10 at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's
11 unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A
12 reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;
13 see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not
14 determine whether counsel's performance was deficient before examining the prejudice suffered
15 by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an
16 ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be
17 followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at
18 697).

19  Petitioner argues that his trial counsel was ineffective in four ways:  (1) by failing
20 to appear at the prosecution's motion to compel DNA evidence; (2) by failing to refresh the
21 recollection of witness Debbie Payne; (3) by failing to call witness Sharita Wright; and (4) by
22 failing to fully examine witness Vita Hoggard.
23 / / /
24 / / /
25 / / /
26 / / /

1. **Motion to Compel DNA Evidence**

In the instant petition, petitioner argues:

> Petitioner received Ineffective Assistance of Trial Counsel when Petitioner's Counsel failed to appear at the hearing on the motion to compel DNA Evidence thus failing to subject the Prosecution's case to meaning adversarial testing.

This claim was raised on direct appeal and again in petitioner's habeas petition to the Superior Court. The Court of Appeal stated:

> Defendant argues that *after* the trial court denied his *Marsden* motion, his counsel was ineffective for failing to appear at two hearings. On August 1, 2000, the prosecutor moved to compel defendant to provide DNA samples. The hearing on the motion was scheduled for August 10, 2000. Defense counsel did not file written opposition to the motion. [¶] . . . On August 10, 2000, defense counsel did not appear at the hearing . . . and the matter was continued to August 11, 2000. [¶] On August 11, 2000, defense counsel again did not appear. The trial court granted the prosecutor's motion, compelling defendant to provide DNA samples, and directed that a message be left on defense counsel's phone machine that the court granted the motion. [¶] On August 14, 2000 defendant and defense counsel appeared to set an additional appearance. There was no claim of lack of notice of the prosecutor's motion to compel DNA samples.
> On August 16, 2000, a technician at the jail collected a cheek swab/sample from defendant.
> Defendant has failed to demonstrate that he suffered prejudice as a result of the lack of opposition and failure of counsel to appear on the motion to compel DNA samples. He has not shown that the result of the prosecutor's motion would have been different or that the result of the trial would have been different. [¶] Defendant argues that it is "irrelevant that the Motion to Compel likely would have been granted anyway." He claims that counsel abandoned him at the hearing on the motion which constituted an "actual denial" of his right to counsel which is reversible per se.

The court then cited Gideon v. Wainwright for the rule that a criminal defendant has a Sixth Amendment right to counsel at every critical stage in the proceedings (i.e., a stage where substantial rights may be affected). See 372 U.S. 335, 344-45 (1963). The state court continued its analysis as follows:

> Defendant cites *King v. Superior Court* (2003) 107 Cal.App.4th 929, 950 in support of his claim that a critical stage includes a pretrial hearing on a motion. *King* is distinguishable. There, the trial court determined that the defendant had forfeited his right to counsel after four appointed counsel had withdrawn based on the defendant's assaults and

> threats towards them. This court reversed, finding that the defendant's due process rights and right to counsel were violated in that appointed counsel, instead of arguing in favor of the defendant at the forfeiture hearing, presented evidence against the defendant and argued in favor of forfeiture.
>
> Here, defendant was represented by counsel except for the failure of counsel to appear at the hearing on the prosecution's motion to compel samples for DNA analysis. Defendant has failed to demonstrate that counsel's nonappearance occurred at a critical stage in that defendant's counsel appeared subsequently and did not challenge the order which had not yet been acted upon.

In its order denying habeas relief on this claim, the Superior Court first concluded that the claim was barred because it had been raised on direct appeal. The court added: "Regardless, petitioner presents no reason for this court not to reach any conclusion that differs from that reached by the Third District Court of Appeal on the appeal in the matter."

This court finds that the state court's logic regarding lack of prejudice is sound. Specifically, petitioner was not prejudiced by his trial counsel's failure to appear at the hearings given that counsel was notified of the ruling and subsequently appeared in court before the DNA evidence was collected and did not object in any way. Had counsel raised some objection or opposition, the trial court could have considered it. As it was, counsel did not object to the prosecution's motion for DNA evidence. It appears that trial counsel did not argue against the trial court's order granting the motion because there would have been no basis upon which to do so. Further, based on the weight of the other physical evidence, the court finds that the result of the trial would have been the same even had counsel defeated the DNA motion. In particular, while the DNA evidence linking petitioner to the crime was strong evidence, the prosecution's case was strong without it given the evidence of abrasions found on the victim which were consistent with her story and the lack of any evidence suggesting that petitioner was not the perpetrator of the crime. On this record, the court cannot say that the state court's decision was either contrary to or an unreasonable application of Strickland.

/ / /

/ / /

      2.    <u>Witness Debbie Payne</u>

Petitioner claims:

> . . . Petitioner was deprive of his 14th Amend right when Trial Counsel Failed to refresh the recollection of Debbie Payne, thus rendering Ineffective Assistance of Counsel.

This claim was raised in petitioner's state habeas petition. The Superior Court stated:

> Petitioner next claims that his trial counsel was ineffective in failing to refresh the recollection of Debbie Payne regarding her statement made to petitioner's investigator that she had had a conversation with the victim after the incident, in which the victim stated that the victim was wearing boxers at the time of the incident and always wore boxers, which would have discredited the evidence that the victim was wearing a sanitary napkin and panties at the time of the incident. Petitioner claims that Payne was asked at trial whether she recalled making a statement to the investigator, and Payne testified that she did not recall, but that trial counsel did not follow up by attempting to refresh Payne's recollection of the matter.
>
> In support, petitioner attaches Exhibit D, which is an unsworn report by investigator Johnson, summarizing Johnson's interview of Payne on August 28, 2001. This is insufficient to support the allegation, not being verified under oath by Johnson as being a true summary of the interview (citation omitted).
>
> Petitioner also attached a copy of pages 549-550 of reporter's transcript, of a small portion of Payne's testimony. It shows that she testified that she did not remember what she said to an investigator in August 2001. It also shows that the deputy district attorney began to question Payne about whether she had ever observed the victim wearing any form of boxers or panties. However, petitioner fails to attach the next few pages of reporter's transcript, that would have shown Payne's reply to the question. Only if Payne had answered that she personally had observed the victim wearing boxers or panties would she have been in a position to testify whether the victim had refused to wear underpants but instead wore boxer shorts. Not having shown this critical portion of Payne's testimony, petitioner fails to meet his burden of showing ineffective assistance of counsel.

It is worth noting at this point that Payne testified in response to the prosecutor's cross-examination question that she, in fact, saw the victim wearing boxers, but that she was unaware of what, if anything, the victim wore under the boxers. The following exchange took place:

> Q:    Is it fair to say you never observed Alyce wearing boxers or panties? [¶] Is that correct?

10

1    A:    No. [¶] I seen her with boxers on.

2    Q:    Okay. Have you ever seen her wear panties before?

3    A:    No.

4    Q:    Now, obviously she's always – when she is wearing boxers I mean she's not wearing anything over the boxers; correct?

5    A:    She's wearing her clothes like saggy.

6    Q:    I see. [¶] You don't know what she wears underneath the boxers, is that correct?

7    A:    Yeah. [¶] That's correct.

It is unclear why the Superior Court did not review the transcript itself to clarify the uncertainty it apparently had on this issue. In any event, the Superior Court continued its analysis as follows:

> Even if Payne had had her memory refreshed with the statement she purportedly made to the investigator, petitioner still has failed to show prejudice. Petitioner does not demonstrate that the pair of underpants that was subjected to DNA testing and admitted at trial was not similar to others kept by the victim in the victim's belongings, or that was of a size that someone else in the victim's household had in that other person's belongings, so as to support a claim that the underpants belonged to someone else in the household instead of the victim. Nor does petitioner demonstrate that the sanitary napkin introduced at trial, that was subjected to DNA testing, would not have been worn by the victim. And, the sanitary napkin was the most incriminating piece of evidence against petitioner, having found to have contained a match to his DNA sample; regardless of whether the victim wore underpants or boxer shorts, that napkin could have been worn in either [case], and petitioner fails to show that the napkin was not the victim's. And, there was physical evidence of assault on the victim, from the tears and abrasions seen on pertinent parts of her body, that were consistent with her version of the events. Thus, it is not reasonably probable that a refreshing of Payne's memory on the point now raised would have made any difference in the outcome of the trial.
>
> For these reasons, this claim is denied (citation to Strickland).

Again, the state court's logic is unassailable. Even if the victim always wore boxer shorts, as petitioner contends, this does not undercut the victim's testimony that she was wearing panties. It is entirely possible she was wearing both. In addition, any discrepancy as to whether the victim was wearing boxers or panties or both does not indicate that she was not also wearing the sanitary napkin. On the strength of the DNA evidence linking the sanitary napkin to

11

petitioner, and the other physical evidence, all of which is consistent with the victim's version of events and petitioner's guilt, any failure to refresh witness Payne's recollection could not have resulted in prejudice under <u>Strickland</u>.  While the victim's testimony may have been somewhat impeached if she was wearing boxers and not panties as she stated, this would have been a credibility question for the jury, and does not necessarily suggest that the result of the trial would have been different.  Therefore, the court concludes that the state court's decision was neither contrary to nor an unreasonable application of the law.

         3.     <u>Witnesses Sharita Wright and Vita Hoggard</u>

Petitioner argues:

> . . . Trial Counsel failed to call Sharita Wright and Vita Hoggard Who Counsel knew or should have known would provide exculpatory testimony.

This claim was raised in petitioner's state court habeas case.  The Superior Court stated:

> Petitioner next claims that his trial counsel was ineffective in failing to present testimony from Sharita Wright and Vita Hoggard, whom he claims had knowledge of exculpatory evidence and would have testified that during a phone conversation between Wright and the victim's mother, when the victim's mother was confronted that she was trying to get petitioner in trouble because petitioner had left her for Hoggard, the victim's mother stated that "I did this because he's having an affair behind my back.  He deserves it.  He's a dog."  Petitioner claims that this was an admission of having filed a false report of abuse and fabrication of the charges.
>
> In support, petitioner presents a sworn affidavit from Vita Hoggard, who now claims that she had heard the phone conversation between Wright and the victim's mother, in which the victim's mother made the alleged statement.  Petitioner claims that he had advised trial counsel of this conversation, but that trial counsel failed to examine either Wright or Hoggard on the matter, even though at least Hoggard testified at trial.  Petitioner claims that Wright also would have testified about the conversation, but does not present any affidavit from Wright in support; petitioner claims that he has contacted Wright on the matter, but admits that Wright refuses to sign a declaration under penalty of perjury.  Nevertheless, petitioner claims that investigator Johnson spoke with Wright on the telephone, and that Wright stated then that the victim's mother had made the alleged statement; petitioner claims that Exhibit D is a document in support of this allegation, but the document, which consists of a report by investigator Johnson, does not mention the matter.

As to Wright, the state court concluded:

> Because Sharita Wright has not signed any sworn declaration or affidavit stating that she heard the victim's mother make any such statement, nor has investigator Johnson signed any sworn declaration or affidavit that Wright made any such statement, petitioner's claim that Wright would have testified in this manner is unsupported. (citations omitted).

The state court then noted that petitioner failed to present sufficient evidence to support his claim as to Hoggard and continued as follows:

> Even if Hoggard was questioned on the matter at trial, the claim still fails because petitioner fails to show prejudice.
>
> First, the statement does not necessarily imply fabrication. It could also be interpreted as an admission that the victim's mother decided to go to police over something that had actually happened, rather than to quietly end a relationship with the petitioner and resolve the matter informally without police intervention. It does not necessarily mean that the victim's mother made up the molestation. Nor does it disprove the victim's testimony or the physical evidence of molestation of the victim.
>
> Further, in her sworn declaration attached as Exhibit C, Hoggard admits that she was having an affair with petitioner at the time. She claims in her declaration that the victim's mother was motivated to seek revenge against petitioner because of Hoggard's affair with petitioner, yet it is Hoggard who may have had her own motivation in making her claim that the victim's mother made the statement. This motivation would have cut into the credibility of Hoggard's claim.
>
> Under these circumstances, it is not reasonably probable that had Hoggard testified at trial, it would have made any difference in the outcome of the trial, particularly in light of the remaining evidence against petitioner, which included the DNA evidence and physical evidence of assault on the victim.
>
> For these reasons, this claim is denied. (citation to <u>Strickland</u>).

As with petitioner's other ineffective assistance of counsel claims, the court finds that the state court reached the correct result under <u>Strickland</u>. Specifically, as to Wright, there is no evidence whatsoever that she would have testified to the alleged conversation with the victim's mother. Thus, counsel's performance could not have been deficient in failing to call Wright as a witness. As to both Hoggard and Wright, petitioner cannot show prejudice because the alleged

13

statement made by the victim's mother is not exculpatory. In light of all the physical evidence, including the DNA match and abrasions found on the victim, the alleged statement would have, as the state court observed, established only that the victim's mother chose to take the matter to the police – for whatever reason – rather than let it go unreported. In other words, the alleged statement in no way establishes that the crimes never occurred. The physical evidence simply forecloses that interpretation of the alleged statement. Additionally, given Hoggard's motivation to lie, this court cannot say that counsel's performance was deficient for not exploring the issue with her at trial. In all probability, the jury would not have believed Hoggard even had counsel questioned her on the statement allegedly made by the victim's mother. Therefore, the court finds that the state court's decision was neither contrary to nor an unreasonable application of Strickland.

### B.     Ineffective Assistance of Appellate Counsel

The Strickland standards also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") Further, there is, of course, no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88. Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. See id. at n.9.

Petitioner asserts appellate counsel was ineffective for failing to establish that the motion to compel DNA evidence was a "critical stage" in the proceedings. The Superior Court addressed this claim in petitioner's state habeas petition as follows:

> Petitioner next claims that . . . appellate counsel was ineffective in failing to establish that the hearing on the motion to compel the DNA sample was a critical stage of the criminal proceeding.
>
> Again, this was of no moment, because even if it were a critical stage, the Third District still undertook harmless review analysis of the matter in the appeal. Thus, this claim also is barred . . . . And, again, this court is not presented with any reason why it should reach any conclusion other than that reached by the Third District on the appeal. As such, this claim is denied, as well.

This claim is derivative of petitioner's ineffective assistance of trial counsel claim related to the DNA motion. In particular, petitioner asserts that he had a right to assistance of counsel at the hearing because it was a critical stage in the proceedings. As to appellate counsel, he claims ineffective assistance on the theory that appellate counsel should have established that the DNA motion hearing was a critical stage. According to petitioner's theory of this claim, had appellate counsel been able to establish that the DNA hearing was a critical stage, then he would have prevailed on appeal with respect to his ineffective assistance of trial counsel claims (and presumably his related trial court error claim, discussed below). Petitioner's theory, however, is flawed in that, even if appellate counsel had convinced the Court of Appeal that the DNA hearing was a critical stage, the conviction would still have been affirmed because the Court of Appeal's decision was based on its conclusion that any error was harmless. Therefore, petitioner cannot establish prejudice because the result of the appeal would have been the same. For this reason, the state court's decision was neither contrary to nor an unreasonable application of the law.

///

///

///

///

1  **C.    Trial Court Errors**

Petitioner claims two instances of trial court error. Specifically, he asserts that the trial court erred by failing to arraign him on the amended charging document. He also claims that the trial court erred in granting the prosecution's motion to compel DNA evidence despite his counsel's absence at the hearing.

   1.   Arraignment on Amended Charging Document

This claim was raised on direct appeal. As to this claim, the California Court of Appeal stated:

> Defendant contends the trial court lacked jurisdiction to enter judgment because he did not enter a plea at his arraignment on the amended information. We conclude that the error was harmless.
> Defendant entered a plea of not guilty to four counts of lewd conduct and denied a prior serious felony allegation in the information. Thereafter, the court granted the People's motion to amend the information – adding two counts – assault with intent to commit rape and sexual battery. Defendant, in propria persona, confirmed that he had received a copy of the amended information and had no objections to its filing. The trial court did not obtain defendant's plea to the amended information. Although he filed numerous motions, defendant does not claim he demurred to the amended information or asserted lack of notice. Represented by counsel, he proceeded to trial on the amended information.
> On appeal, defendant does not claim lack of notice or denial of any substantive right. He simply argues that the trial court's failure to obtain his plea to the amended information requires reversal of all of his convictions, or at a minimum, the two additional counts. He primarily relies upon *People v. Monaghan* (1894) 102 Cal. 229. His claim is frivolous.
> Penal Code section 1009 provides, in relevant part: "The court in which an action is pending may . . . permit an amendment of an . . . information, . . . for any defect or insufficiency, at any stage of the proceedings, . . . The defendant shall be required to plead to such amendment or amended pleading forthwith, . . . ."
> "The purpose of an arraignment or a rearraignment is to inform the accused of the charge against him and to give him fairly the opportunity to plead to it." (*In re Mitchell* (1961) 56 Cal.2d 667, 670).
> Defendant's reliance upon *People v. Monaghan* is misplaced. First, *Monaghan* is distinguishable on the facts. There, the defendant withdrew his not guilty plea and demurred to the indictment. The demurrer was overruled. The defendant did not thereafter enter a new plea immediately but was granted time to plead later. He never entered a plea and was convicted after a jury trial. The Supreme Court reversed concluding there was *no* understanding that upon the court's overruling of the demurrer the not guilty plea would be restored. Defendant never declined to plead and

>cannot waive the plea requirement by going to trial without objection. (012 Cal. at pp. 230-234).
>   Second, *Monaghan* was decided prior to the adoption of the California Constitutional provision which provides that a judgment shall not be reversed for procedural error unless there has been a miscarriage of justice. (*People v. Sturdy* (1965) 235 Cal.App.2d 306, 312-313).
>   Here, defendant entered a not guilty plea to four counts of lewd conduct. The added counts, sexual battery and assault with intent to commit rape, involved the same set of facts. The trial court's failure to arraign defendant on the amended information was error but resulted in no miscarriage of justice; defendant was tried as if a "not guilty" plea was entered and defense counsel posed no objection at the trial level. (citations omitted).
>   The error was not prejudicial and did not affect the court's jurisdiction.

The court finds that the United States Supreme Court case cited by respondents in their answer is dispositive. In Garland v. Washington, the Supreme Court held that due process does not require any particular arraignment procedure but only requires that the accused be provided notice of the charges and an opportunity to defend himself. See 232 U.S. 642, 644-45 (1914). There can be no due process violation if the defendant had notice and was tried by a jury as though he had entered a not guilty plea on all counts. See id. at 644. The Supreme Court stated:

>. . . A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.

Id. at 646.

As the state court noted, this case presents the same situation in that petitioner was provided notice of the additional counts outlined in the amended charging document, had an opportunity to object in the trial court and didn't, and was tried on all counts as if he had entered a formal plea of not guilty. Therefore, the state court's decision was neither contrary to not an unreasonable application of the law.

17

### 2. Motion to Compel DNA Evidence

Petitioner raised this claim in his habeas petition to the Superior Court, which stated:

> Petitioner next claims that his Fifth, Sixth, and Fourteenth Amendment and Cal. Const., art. I, § 7 rights to due process and to counsel were violated when the trial court granted the prosecution's motion to compel the DNA sample outside of the presence of petitioner and his counsel. Petitioner claims that this was a critical stage of the prosecution, and that a violation of it was prejudicial per se.
>
> The claim is a restatement of petitioner's first claim, which is barred under Waltreas. It is denied for the same reasons that his first claim is denied.
>
> Further, petitioner is incorrect that denial of the right to be present and to have counsel present is prejudicial per se. Rather, denial of the right to be present and have counsel present has long been held to be subject to harmless error review analysis (citations omitted), which the Third District Court of Appeal undertook in the appeal on this case.

For the reasons discussed above, this court finds that there was no error in counsel's failure to appear at the DNA motion hearing because: (1) counsel was notified of the ruling; and (2) before the DNA evidence was colleted counsel had an opportunity to object and did not do so. Therefore, as with all of petitioner's other claims, the state court's decision was neither contrary to nor an unreasonable application of the law.

///
///
///
///
///
///
///
///
///

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and
2. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 21, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE